Case No. 23-2182

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

ALBERT COLLINS, JR.,
*Plaintiff – Appellant*

v.

KANSAS CITY MISSOURI PUBLIC SCHOOL DISTRICT,
*Defendant – Appellee*

---

# APPEAL FROM THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

---

# BRIEF OF APPELLEE

---

Charlie J. Harris, Jr., MO #44115
Nicholas Rex Daugherty, MO #66942
Kelly M. Sabatés, MO #72995
SEYFERTH BLUMENTHAL & HARRIS
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Telephone: (816) 756-0700
Facsimile: (816) 756-3700
charlie@sbhlaw.com
nickd@sbhlaw.com
kokis@sbhlaw.com
*Attorneys for Defendant – Appellee Kansas City Missouri Public School District*

# SUMMARY OF THE CASE

This employment discrimination case arises from Appellant Albert Collins' ("Collins") termination from employment with Appellee Kansas City Missouri Public School District ("KCPS"). Collins admittedly and willfully participated in an attendance fraud scheme with a handful of colleagues. Each of his colleagues, that were employed when the fraud was discovered and fully investigated, were terminated or left voluntarily in lieu of termination. Importantly, the employees that were terminated were a diverse group comprised of Black, White, and Hispanic individuals. Collins initially charged KCPS with retaliation based solely on knowledge he possessed regarding the scheme. However, the crux of this case is whether Collins may belatedly reverse course to manufacture fabricated and unsupported claims of unlawful discrimination and retaliation against KCPS.

Despite Collins' best efforts to muddy the issues with misdirection, deflection, and patent misrepresentations of fact, Collins has failed to meet his burden to establish his prima facie claims. He cannot now circumvent that failure by attempting to transplant volumes of undisclosed "evidence" from other litigation as a substitute for evidence in this case. Put succinctly, there is no genuine issue of material fact and the law pertaining to this case, and the district court's decision should stand.

KCPS requests oral argument in this matter.

## CORPORATE DISCLOSURE STATEMENT

Appellee Kansas City Missouri Public School District states that it is a public body as defined by R.S.Mo. § 105.500 and, therefore, is not a "nongovernmental corporation" as contemplated by Rule 26.1(a) of the Federal Rules of Appellate Procedure.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ...................................................................i

CORPORATE DISCLOSURE STATEMENT ..................................... ii

TABLE OF AUTHORITIES ...............................................................v

STATEMENT OF THE ISSUES ..........................................................1

STATEMENT OF THE CASE ..............................................................2

*Statement of Facts* ............................................................................3

*Collins' participation in fraud* ........................................................4

*Johnson's Report* .............................................................................6

*The Charge* .......................................................................................8

*Procedural History* ..........................................................................9

SUMMARY OF THE ARGUMENT ..................................................16

LEGAL ARGUMENT AND AUTHORITIES ....................................17

I. The district court did not err in granting summary judgment in favor of KCPS on Collins' Race Discrimination Claims....................17

A. Standard of Review....................................................................17

B. Collins failed to establish the prima facie elements of race discrimination. ...........................................................................19

(1) KCPS's legitimate expectations. ...........................................20

(2) Collins was not treated differently than similarly situated employees. 22

a. Employees who were determined to be involved. ...................23

b. Bishop is not similarly situated.............................................25

c. Attendance reconciliation personnel.....................................27

(3) Legitimate, Nondiscriminatory Reason and Pretext. ............29

C. Collins' Hearsay Arguments Are Without Merit.....................31

(1) Collins failed to preserve the issue for review.......................32

**(2)**      The Declarations Are Not Hearsay. ........................................... 33

**(3)**      KCPS's Knowledge and Intent are not Hearsay. ................... 36

**(4)**      Invited Error ................................................................................... 39

**D.**      Collins' "Sham Declaration" Argument Fails. ....................... 40

**II.**   The district court did not err in granting summary judgment in favor of KCPS on Collins' Retaliation Claim. ....................................... 42

**A.**      Standard of Review ...................................................................... 42

**B.**      Failure to Exhaust Administrative Remedies .......................... 42

**C.**      Collins failed to establish the prima facie elements of his claim. ............ 44

**III.** The district court did not err in granting summary judgment in favor of KCPS on Collins' Whistleblower Claim. ............................ 47

**A.**      Standard of Review ...................................................................... 48

**B.**      Collins' Whistleblower Claim Fails. ......................................... 48

**(1)**      MO. REV. STAT. § 105.055 is inapplicable. ............................ 48

**(2)**      KCPS was already aware of the attendance fraud. ............... 50

**(3)**      Collins' own violations. .............................................................. 52

**CONCLUSION** ............................................................................................ 55

**CERTIFICATE OF COMPLIANCE WITH RULE 32(G)** ............................ 57

**CERTIFICATE OF SERVICE** ..................................................................... 58

# TABLE OF AUTHORITIES

## CASES

*Baker v. Silver Oak Senior Living Mgmt. Co., LC*, 581 F.3d 684 (8th Cir. 2009) ................................................................................................ 40, 41

*Boston v. TrialCard, Inc.*, 75 F.4th 861, 868 (8th Cir. 2023) ...................... passim

*Briley v. Carlin*, 172 F.3d 567, 571 (8th Cir. 1999) .............................................. 42

*Broady*, 247 B.R. 470 (8th Cir. B.R. 2000) ............................................................ 19

*Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 830,831 (8th Cir. 2020) ................................................................................................ 40

*Carpenters' Pension Fund of Illinois v Neidorff*, 30 F.4th 777, n.8 (8th Cir. 2022) ................................................................................................ 19

*Carter v. Atrium Hospitality*, 997 F.3d 803, 808 (8th Cir. 2021) .......................... 20

*Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006) ............................... 42, 44

*Doe v. Univ. of St. Thomas*, 972 F.3d 1014, 1017 n.3 (8th Cir. 2020) ................ 21

*Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) ............. 42

*EEOC v. Kohler Co.*, 335 F.3d 776, 772 (8th Cir. 2003) ......................... 18, 44, 47

*Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir. 2013) ...... 37

*Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) ................ 1, 26

*Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785 (8th Cir. 2012) ........................... 1, 33

*Garang v. City of Ames*, 2 F.4th 1115 (8th Cir. 2021) .......................................... 41

*Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) ....................................... 29

*Girten v. McRentals, Inc.*, 337 F.3d 979, 982 (8th Cir. 2003) .............................. 29

*Grogg v. Mo. Pac. R.R. Co.*, 841 F.2d 210, 213–14 (8th Cir. 1988) .................... 38

*Habib v. NationsBank*, 279 F.3d 563, 567 (8th Cir. 2001) ............................. 17, 27

*Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011) ....................... 21, 22

*Hudson v. O'Brien*, 449 S.W.3d 87(Mo. App. W.D. 2014)................. **1, 48, 50, 51**

*Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021 (8th Cir. 2002) ........ **1, 20, 32**

*Int'l Broth. of Elec. Workers, Local Union 545 v. Hope Elec. Corp.*, 380 F.3d at 1084, 1096 ........................................................................................40

*Johnson v. City of Leadington*, No. 4:19-cv-02282-SEP, 2022 WL 179218 (E.D. Mo. Jan. 20, 2022)....................................................................................1, 51

*Johnson v. Herman*, 132 F.Supp.2d 1130, 1133 (N.D. Ind. 2001) .....................36

*Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047 (8th Cir. 2005) .............47

*Land v. Washington Cnty., Minn.*, 243 F.3d 1093, 1095 (8th Cir. 2001) ............20

*Mahlandt*, 588 F.2d at 630 ...............................................................................38

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)...................................19

*Miller v. Citizens Sec. Grp., Inc.*, 116 F.3d 343, 346 (8th Cir. 1997)............ **21, 29**

*Montin v. Moore*, 846 F.3d 289, 295 (8th Cir. 2017).......................................33

*Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994)...........................17

*Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378 (8th Cir. 2016)....17

*Onyiah v. St. Cloud St. Univ.*, 684 F.3d 711, 716 (8th Cir. 2012)........................31

*Parisi v. Boeing Co.*, 400 F.3d 583 (8th Cir. 2005).........................................1, 44

*Parker v. City of St. Joseph, Mo.*, No. 04-6054-CV-SJ-GAF, 2008 WL 11337946, at *7 (W.D. Mo. June 6, 2008) ........................................................46

*Phillips v. Wolfspeed, Inc.*, No. 1:22-CV-112, 2023 WL 3479630, at *3 (M.D.N.C. May 16, 2023) ...............................................................................22

*Porter v. City of Lake Lotawana*, 651 F.3d 894, 898 (8th Cir. 2011)...................44

*Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 638 (8th Cir. 2011)......................29

*Rester v. Stephens Media, LLC*, 739 F.3d 1127 (8th Cir. 2014) ..........................17

*Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009)........17

*Richest v. City of Kan. City*, 643 S.W.3d 610, 613 (Mo. App. W.D. 2022) .........48

*Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006).......................41

*Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 855 n.2 (8th Cir. 2021)..............13

*Smith v. Toyota Motor Corp.*, 964 F.3d 725, 730 (8th Cir. 2020) ........................39

*Spurlock v. City of Columbia*, 670 S.W.3d 151, 156 (Mo. App. W.D. 2023) 48, 51

*Stewart v. Norcold, Inc.*, 24 F.4th 1183, 1185 (8th Cir. 2022) .............................33

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) .......... 17, 20

*Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005) ................................... 27, 38

*Tuttle v. Mo. Dept. of Agriculture*, 172 F.3d 1025, 1033 (8th Cir. 1999) ............37

*Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) .. 20, 22, 27, 28

*U.S. v. Lamm*, 5 F.4th 942, 947 (8th Cir. 2021) ....................................................33

*U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).....................................12

*U.S. v. Spotted Bear*, 920 F.3d 1199, 1201 n.2 (8th Cir. 2019) ...........................40

*Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704 (8th Cir. 2018)......................................................................................................................12

*Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir. 1999)...........29

*Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558 (8th Cir. 1997) 1, 26, 29, 32

*Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 591 (8th Cir. 2011) ................................................................................................................................32

*White Communications, LLC v. Synergies3 Tec Servs., LLC*, 4 F.4th 606, 613 (8th Cir. 2021) ....................................................................................................37

*Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) ...44

## RULES

**42 U.S.C. § 1983** ..................................................................................11

**684 F.3d at 793** ..................................................................................38

**906 F.3d at 703** ..................................................................................13

**FED. R. CIV. P. 37(c)(1)** ......................................................................12

**FED. R. CIV. P. 56** ...............................................................................20

**FED. R. CIV. P. 56(c)** ............................................................................3

**FED. R. CIV. P. 56(c)(2)** ......................................................................37

**FED. R. CIV. P. 56(c)(4)** ......................................................................39

**FED. R. CIV. P. 56(e)** ........................................................................4, 61

**FED. R. EVID. 201(b)** ..........................................................................21

**FED. R. EVID. 803(6)** .....................................................................44, 45

**L.R. 56.1(b)(1)** ....................................................................................4

**R.S.Mo. § 105.500** ............................................................................. ii

**Rule 26.1(a)** ....................................................................................... ii

## STATUTES

**MO. REV. STAT. § 105.055** ..................................... 16, 56, 57, 61

**MO. REV. STAT. § 105.055.3(1)** ...................................... 58, 59

**MO. REV. STAT. § 105.055.6(3)** ................................. 57, 58, 60

**MO. REV. STAT. § 105.055.7(3)** .......................................56

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the district court properly granted summary judgment in favor of KCPS on Collins' race discrimination claim.

*Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785 (8th Cir. 2012)

*Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859 (8th Cir. 2008)

*Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558 (8th Cir. 1997)


II.    Whether the district court properly granted summary judgment in favor of KCPS on Collins' retaliation claim.

*Parisi v. Boeing Co.*, 400 F.3d 583 (8th Cir. 2005)

*Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021 (8th Cir. 2002)


III.    Whether the district court properly granted summary judgment in favor of KCPS on Collins' whistleblower retaliation claim.

*Hudson v. O'Brien*, 449 S.W.3d 87(Mo. App. W.D. 2014)

*Johnson v. City of Leadington*, No. 4:19-cv-02282-SEP, 2022 WL 179218 (E.D. Mo. Jan. 20, 2022)

# STATEMENT OF THE CASE

This employment discrimination case presents a unique situation in which all material facts are either expressly undisputed or deemed admitted due to Collins' failure to comply with FED. R. CIV. P. 56(c). In response to KCPS's summary judgment motion, Collins expressly admitted 83 material facts,[1] including that he used his sole discretion to knowingly falsify student attendance records without documentary support in violation of KCPS policies.[2] For many others, Collins failed to cite record evidence supporting his bare denials, or cited material which was either unresponsive or confirmed the material fact.[3] Further, Collins improperly attempted to controvert others with undisclosed "evidence" from other litigation, none of which actually controverted or addressed the stated facts.[4]

Because Collins failed to controvert or address the material facts, the district court was permitted to consider them undisputed for purposes of summary judgment.

---

[1] **(App. 379-404 R.Doc. 47, at 5-30, ¶ 1-6, 17-36, 39-60, 62-63, 65-67, 69-71, 74, 76-77, 84-103, 106, 110, 117, 123, 139.)**

[2] **(App. 389-398 R.Doc. 47, at 15-24, ¶ 62-63, 66-67, 70, 100, 103, 110.)**

[3] **(App. 380-406 R.Doc. 47, at 6-32, ¶ 7-11, 13, 28, 35, 37-38, 45, 61, 65, 68, 71, 80-82, 109, 118-133, 140-147.)**

[4] **(App. 389-406 R.Doc. 47, at 15-32, ¶ 61, 71-74, 76, 78, 80-83, 85-87, 89, 100, 104, 105, 111-116, 120-122, 124-147.)** For all the reasons set forth in KCPS's Motion to Strike, it is improper to consider material and testimony Collins has relied upon from other litigation, including *Waterman* (No. 2116-CV01848), *Johnson* (No. 4:20-cv-00277), *Collier* (No. 2016-CV14140), and *Baldridge* (No. 1716-CV31753). Regardless, even if consideration thereof were appropriate, that material directly illustrates the futility of Collins' claims in this action, as explained *infra*.

FED. R. CIV. P. 56(e). And that is precisely what was required under applicable local rules in this case. *See* L.R. 56.1(b)(1) (all facts "are deemed admitted" for summary judgment "[u]nless specifically controverted").

### *Statement of Facts*

Collins began working for KCPS in around 2005 or 2006. **(App. 406 R.Doc. 47, at 32, ¶ 148.)** For some time, Collins worked as a dropout prevention specialist, eventually serving as an attendance ambassador in the Office of Student Intervention ("OSI"). **(App. 405 R.Doc. 47, at 31, ¶ 141.)** Collins' immediate supervisor was Samuel Johnson ("Johnson"). **(App. 1329 R.Doc. 99, at 3.)** Johnson reported to Luis Cordoba ("Cordoba") and Vickie Murillo ("Murillo"), who directed Johnson to improve student attendance numbers within the district. **(*Id.*)**

In 2016, secretaries and other KCPS personnel, the majority of whom were Black, reported to the Board of Education ("BOE") offices to reconcile student attendance—which was not an illegal or uncommon occurrence. **(App. 401-403 R.Doc. 47, at 27-29, ¶ 124-133; *id.*, ¶ 141-147.)** Such personnel made authorized changes to attendance records to correct classification codes from late ("L") to tardy ("T"). **(App. 406 R.Doc. 47, at 29, ¶ 143-144.)** Personnel were not permitted to use their own discretion in making corrections but were to follow the guidance received from another school district. **(*Id.*; App. 1329 R.Doc. 99, at 3.)** However, it was later determined that those instructions were based upon a mistaken

interpretation of the information received. **(App. 406 R.Doc. 47, at 32, ¶ 145.)** Because the personnel had made changes based only upon this mistaken interpretation, none of them were disciplined for participation in the reconciliation efforts. **(*Id.*, ¶ 146.)**

### *Collins' participation in fraud*

Collins began altering attendance records sometime in June 2016. **(App. 1330 R.Doc. 99, at 4.)** However, Collins' activities differed wildly from BOE reconciliation activities. **(*Id.*)** Unlike other personnel, Collins made daily alterations to attendance data from his home on his personal computer, often after hours, based on lists of students he individually received from Johnson. **(App. 387 R.Doc. 47, at 13, ¶ 45-47.)** Collins used his own discretion to determine not only which alterations to make, but also how far the attendance scores would be increased. **(App. 1330 R.Doc. 99, at 8.)**

Collins's participation was documented in a series of emails exchanged with Johnson between the parties' personal email accounts. **(*Id.* at 4.)** On June 13, 2016, Johnson sent Collins an email entitled "Let's work my brother" requesting Collins to "move 50–70 a day." **(App. 388 R.Doc. 47, at 14, ¶ 53.)** Johnson stated: "if you could move about 50 up tonight so they can see a difference that would be great." **(*Id.*)** Collins changed the attendance scores of 50–70 students. **(*Id.*, ¶ 54.)** On June 16, 2016, Johnson asked Collins how many students he had moved the prior evening

and gave him a list of additional students to "knock out." **(*Id.*, ¶ 55.)** The next day, Johnson emailed Collins, stating: "whats [sic] good my brother. Keep me posted by 7am total number you moved last night." **(App. 388 R.Doc. 47, at 14, ¶ 56.)** When Collins notified Johnson he moved more students up, Johnson responded: "Keep rocking bro … we need it all." **(*Id.*, ¶ 57.)** Collins sent additional alterations to Johnson on July 1, 2016. **(App. 1331 R.Doc. 99, at 5.)**

Collins altered records until "they hit whatever mark they needed to hit." **(*Id.*)** Collins ultimately admitted it was his decision, and at his sole discretion, which and how many individual records he altered. **(App. 389-391 R.Doc. 47, at 15-17, ¶ 61, ¶ 68, ¶ 71-72.)** Collins likewise admitted he had no documentation to support his changes. **(App. 1332 R.Doc. 99, at 6.)** Nevertheless, Collins never questioned Johnson's requests, nor did he ever refuse to participate or otherwise object. **(*Id.*)**

In 2018, Collins realized his previous actions were "wrong." **(App. 391 R.Doc. 47, at 17, ¶ 72.)** However, Collins did not report his conduct to KCPS's Human Resources Department ("HR"), nor did he consider any discussions he had with anyone else as qualifying as a report. **(App. 393 R.Doc. 47, at 19, ¶ 79.)** Collins explained that he did not report his conduct because a supervisor informed him there was already an ongoing investigation into the matter. **(App. 1332-33, R.Doc. 99, at 6-7.)** Importantly, never did Collins come forth and admit or otherwise report his involvement in perpetrating the fraud until KCPS learned of his

involvement from a report it received from the Missouri Department of Elementary and Secondary Education ("DESE") and questioned him as part of its investigation of the fraud. **(App. 397-398 R.Doc. 47, at 23-24, ¶ 102-108.)** Only then, did Collins admit his involvement and wrongdoing. **(App. 386 R.Doc. 47, at 12, ¶ 44.)**

### *Johnson's Report*

In January 2019, after he resigned from KCPS, Johnson reported the attendance fraud scheme to DESE. **(App. 396 R.Doc. 47, at 22, ¶ 99-100.)** Johnson sent DESE supporting documents, including charts and spreadsheets he received from Collins, which contained confidential student information. **(App. 398 R.Doc. 47, at 24, ¶ 106.)** Johnson's reasons for reporting the scheme to DESE were to obtain "retribution" because he "felt some kind of way against the district" after he was demoted. **(App. 392 R.Doc. 47, at 18, ¶ 74; App. 408 R.Doc. 47, at 34, ¶ 162.)**

DESE subsequently forwarded Johnson's report to KCPS. **(App. 1333 R.Doc. 99, at 7.)** At that time, Dr. Jennifer Collier ("Dr. Collier")[5] was the highest-ranking official in HR. **(App. 395 R.Doc. 47, at 21, ¶ 91-92.)** Marilyn Overton ("Overton")[6] was the Director of Employee Relations. **(*Id.*, ¶ 90.)** Because the documents received from DESE implicated Collins, KCPS met with him on

---

[5] Dr. Collier is a Black female who is over the age of 40. **(App. 383 R.Doc. 47, at 9, ¶ 25.)**

[6] Overton is a Black female who is over the age of 40. **(App. 383-384 R.Doc. 47, at 9-10, ¶ 26.)**

February 28, 2019, to discuss the reported attendance fraud and his involvement. **(App. 397-398 R.Doc. 47, at 23-24, ¶ 102-108.)**

KCPS placed Collins on administrative leave to investigate an email containing confidential student information Collins sent to a former employee without student or parent permission. (***Id.***) Over the next nine months, while Collins was being paid and not required to report to work, KCPS completed a thorough investigation of the allegations, including enlisting independent outside firms to assist with the investigation. **(App. 1334 R.Doc. 99, at 8.)** Collins was interviewed multiple times by outside firms and met with Dr. Collier "five to six times." **(App. 409 R.Doc. 47, at 35, ¶ 170-71.)** During the investigation, Collins apologized to Dr. Collier for his actions, admitting that he "messed up." **(App. 386 R.Doc. 47, at 12, ¶ 44.)**

Based upon the information it obtained, KCPS ultimately determined Collins willfully participated in attendance fraud by making thousands of changes to attendance data during the 2015-2016 school years without supporting documentation. **(App. 397-399 R.Doc. 47, at 23-25, ¶ 102-116.)** Collins admitted he participated in changing attendance data and admitted he did not have proper documentation. **(App. 398 R.Doc. 47, at 24, ¶ 109; App. 1332 R.Doc. 99, at 6.)** KCPS also determined that Collins emailed confidential student information to a former employee without authorization. **(App. 397-399 R.Doc. 47, at 23-25, ¶ 102-**

**116.)** KCPS policies not only explicitly prohibit employees from removing district property and falsifying district records, but also require employees to keep student information strictly confidential. **(App. 241-242 R.Doc. 40-10, at 1-2; App. 386 R.Doc. 47, at 12, ¶ 42-43.)**

After the investigation was completed, all individuals KCPS determined to be involved in the attendance scheme (and who were still employed) were either terminated for their involvement or resigned in lieu of termination. **(App. 403-404 R.Doc. 47, at 29-30, ¶ 136-137.)** That group was comprised of one White male, one Hispanic male, one Black male, and one Black female. **(App. 404 R.Doc. 47, at 30, ¶ 138.)** KCPS likewise decided to terminate Collins for his involvement but offered him the opportunity to resign in lieu of termination. **(App. 399 R.Doc. 47, at 25, ¶ 116; App. 403, ¶ 135.)** Collins declined that opportunity and was terminated on December 9, 2019. **(App. 400 R.Doc. 47, at 26, ¶ 117.)**

### *The Charge*

On December 9, 2019, immediately following his termination, Collins submitted a pre-charge inquiry with the Equal Employment Opportunity Commission ("EEOC") while the allegations were fresh in his mind. **(App. 383 R.Doc. 47, at 9, ¶ 21-22.)** Collins did not mark the boxes indicating any belief that he was retaliated against for filing a charge, contacted a governmental agency, complained about discrimination, or helped someone or was a witness in someone

else's discrimination complaint. **(App. 1335 R.Doc. 99, at 9.)** Instead, Collins' handwriting stated: "FORMER EMPLOYEE SUED THE DISTRICT [AND] BECAUSE OF THE INFORMATION I POSSESS I WAS TERMINATED." (***Id.***) Collins later confirmed that he believed he was retaliated against "for having the – attendance names." **(App. 383 R.Doc. 47, at 9, ¶ 24.)** Collins' pre-charge inquiry did not identify any employees Collins believed were treated more favorably. **(App. 384 R.Doc. 47, at 10, ¶ 28.)**

On January 8, 2020, Collins officially filed his Charge of Discrimination. **(App. 999 R.Doc. 40-2, at 1.)** Although the "Race" box was not electronically checked, it was marked by hand at some point before filing. **(App. 1336 R.Doc. 99, at 10.)** However, the body of Collins' charge did not mention any instances of race discrimination or prior complaints about race discrimination. (***Id.***) Instead, Collins' charge alleged he was terminated for his participation in an investigation regarding "unethical attendance record changes." (***Id.***) On January 15, 2020, the EEOC issued its Notice of Rights, stating its investigation was unable to conclude that a violation occurred. **(App. 384 R.Doc. 47, at 10, ¶ 32.)**

### *Procedural History*

On April 14, 2020, Collins filed this action in the Circuit Court of Jackson County, Missouri. **(App. 5 R.Doc. 1-1.)** Collins asserted claims for discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1983

9

("§ 1983") (Count I); discrimination under the Age Discrimination in Employment Act ("ADEA") (Count II); retaliation under the ADEA, Title VII, and § 1983 (Count III); Missouri workers' compensation retaliation (Count IV); and whistleblower retaliation under MO. REV. STAT. § 105.055 (Count V). **(App. 13-21 R.Doc. 1-1, at 9-17.)**[7] After KCPS removed the action, the court remanded Collins' workers compensation retaliation claim (Count IV), retaining jurisdiction over all remaining claims. **(App. 117-124 R.Doc. 11, at 1-8.)** On December 2, 2022, KCPS filed its motion for summary judgment. **(App. 158-175 R.Doc. 39, at 1, R.Doc. 40, at 1-16.)** KCPS's motion was fully briefed by January 27, 2023. **(App. 375-427, R.Doc. 47, at 1-53; App 1024-1054 R.Doc. 50, at 1-31.)**

On January 27, 2023, KCPS filed a Motion to Strike pursuant to FED. R. CIV. P. 37(c)(1), based upon Collins' opposition relying almost exclusively upon mounds of undisclosed evidence from other litigation neither involving Collins' claims against KCPS nor the undersigned or anybody from the undersigned law firm. **(App. 1097-1117 R.Doc. 51, at 1-2, R.Doc. 52, at 1-19.)** KCPS pointed out that Collins failed to disclose the evidence in either initial disclosures or in response to KCPS's numerous and unambiguous discovery requests. **(App. 1107-1111 R.Doc. 52, at 9-13.)** Because Collins knew of the evidence for months (if not years), KCPS noted

---

[7] Collins subsequently withdrew all claims of age-based discrimination or retaliation, and makes no argument with respect to such claims.

that disclosing it well after the discovery and dispositive motions deadlines was prejudicial and could not have been substantially justified. **(App. 1111-1115 R.Doc. 52, at 13-15.)**

As noted in KCPS's reply, Collins claimed he was not required to disclose the material because it was allegedly "impeachment" evidence. **(App. 1293-1298 R.Doc. 54, at 1-6.)** However, KCPS noted that Collins was not using the evidence to "impeach" anything, but instead offered it as substantive evidence. (***Id.***) KCPS pointed out that exclusion of the evidence was mandatory, unless Collins demonstrated that his failure was substantially justified or harmless, but he had failed to do so. **(App. 1299-1303 R.Doc. 54, at 7-11.)**

On April 12, 2023, the court entered its Amended Order granting KCPS's Motion for Summary Judgment but denying its Motion to Strike. **(App. 1327-1357, R.Doc. 99, at 1-31.)** On the Motion to Strike, the court found there was no "unfair surprise" resulting from Collins' failure to disclose his evidence because KCPS was a party to that litigation. **(App. 1327 R.Doc. 99, at 1, n.1.)** It appears the court reasoned that Collins' "omissions" in failing to disclose evidence were "harmless" and it would consider Collins' allegations to the "very limited extent" they were relevant and supported. (***Id.***)[8]

---

[8] KCPS requests the Court to review its Motion to Strike and grant that motion for all the reasons set forth therein. There is no authority supporting the notion that KCPS clairvoyantly should have "read between the lines" to determine Collins'

Nevertheless, the court granted KCPS's Motion for Summary Judgment on all of Collins' claims. On his race discrimination claim,[9] the court determined Collins failed to establish the prima facie elements, noting his comparisons to other employees were flawed. **(App. 1343-1347 R.Doc. 99, at 17-21.)** The court found that the majority of personnel completing attendance reconciliation were also Black and, therefore, were not proper comparators.[10] **(App. 1345 R.Doc. 99, at 19.)** Regardless, the court found they acted pursuant to misguided instructions, which

counsel intended to use the evidence simply because KCPS was a party to other litigation. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704 (8th Cir. 2018). Without knowing he intended to mix-and-match his evidence in separate lawsuits, KCPS simply had no reason to depose such witnesses as to Collins' claims in this action. *Id.*; *see U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (discovery rules "make trial less a game of blind man's bluff and more a fair contest with basis issues and facts disclosed to the fullest practicable extent."). That KCPS might be said to have had some general awareness of other litigation "cannot change the fact that [Collins] never disclosed [it]" as evidence that he "may use at trial[.]" 906 F.3d at 703. Contrary to Collins' suggestion, the court did not "essentially" find KCPS lacked a "good faith" basis for its motion. **(Aplt. Br. at 11.)** By basing its determination upon the issue of prejudice, the court necessarily found that Collins did, indeed, violate discovery rules by failing to properly disclose evidence—since prejudice is irrelevant if no discovery violation occurred. KCPS respectfully requests this Court to review and grant its Motion to Strike, as this Court can affirm the grant of summary judgment on any basis supported by the record.

[9] Collins withdrew his age discrimination claim (Count II), conceding that it was unsupported by evidence. **(App. 379 R.Doc. 47, at 5.)** Although Collins' did not expressly dismiss his age-based retaliation claim (Count III), the court found he presented no argument on the issue and dismissed that claim accordingly. **(App. 1355 R.Doc. 99, at 29, n.8.)** Collins does not appeal with respect to either of his age-based claims.

[10] This similarly made L. Collier an improper comparator. **(App. 1346 R.Doc. 99, at 20.)**

were not subject to the exercise of individual discretion. **(App. 1344 R.Doc. 99, at 18.)**

By contrast, Collins' conduct was "very different from changing an 'L' to a 'T'"—since he altered records based on his discretion, on his personal computer at home, using a list of students he individually received from Johnson. **(App. 1344-1345 R.Doc. 99, at 18-19.)** The court likewise rejected Collins' comparison to Rick Bishop ("Bishop") since they worked in different departments, with different job duties, responsibilities, and supervisors. **(App. 1346 R.Doc. 99, at 20.)** Additionally, the court not only found Collins failed to prove they committed the same offense, but also that Collins was unaware of the circumstances of Bishop's suspension. **(App. 1339, 1346 R.Doc. 99, at 13, 20.)**

Even if Collins had met his burden, the court found KCPS articulated a nondiscriminatory reason for its decision, as Collins admittedly altered attendance records in violation of applicable policies. **(App. 1347 R.Doc. 99, at 21.)** And because Collins failed to show KCPS's reason for his termination was false, the court held that Collins' claim would have failed even if he had met his initial burden. **(*Id.*)** Accordingly, Collins' race discrimination claim failed as a matter of law.[11]

---

[11] The court also rejected any claim based upon § 1983 or § 1981 for similar reasons, noting that Collins either did not plead such claim or failed to allege a constitutional basis for the same. **(App. 1341 R.Doc. 99, at 15, n.5.)** Collins provides no argument on appeal regarding either of those claims, only briefly mentioning them in passing. *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 855 n.2 (8th Cir. 2021) (mere "passing

Collins similarly failed to carry his initial burden on his retaliation claim (Count III). Finding there "was no evidence" Collins ever reported discrimination, formally or informally, the court found Collins failed to show he engaged in "protected activity"—noting that neither Collins' charge nor pre-charge inquiry connected any retaliation to his protected status. **(App. 1353-1354 R.Doc. 99, at 27-28.)** Instead, those documents "couche[d] any retaliatory actions as resulting from his participation in the attendance scheme and investigation, not his race." **(App. 1354 R.Doc. 99, at 28.)** Therefore, Collins' retaliation claim failed. **(App. 1355 R.Doc. 99, at 29.)**

On Collins' whistleblowing retaliation claim (Count V), the court found Collins did not make any "disclosure" within the meaning of MO. REV. STAT. § 105.055, because it was clear KCPS was already aware of the information allegedly disclosed. **(App. 1356 R.Doc. 99, at 30.)** The court further noted Collins did not voluntarily come forward with information but, instead, revealed the information only after KCPS interviewed him about his involvement. **(*Id.*)** Finally, even assuming Collins provided additional details regarding the scheme, the statute

---

references" to error insufficient to preserve issue for appeal). Collins likewise does not appeal the court's rulings regarding his failure to exhaust administrative remedies on his alternative race-based theories of associational discrimination and failure-to-promote. **(App. 1348-1352 R.Doc. 99, at 22-26.)** Regardless, any such claims would fail for the same reasons set forth in the court's summary judgment order.

contained an exception for "the employee's own violations[.]" **(App. 1355-1356 R.Doc. 99, at 29-30.)** And because Collins' admitted his involvement, his termination was lawful. **(App. 1357 R.Doc. 99, at 31.)**

Accordingly, the district court granted KCPS's Motion for Summary Judgment and entered Judgment in its favor. **(App. 1327-1360, R.Doc. 99, at 1-31, R.Doc. 100, at 1-3.)** Collins now appeals.[12]

---

[12] On April 21, 2023, KCPS filed its Bill of Costs and supporting materials. **(App. 1361 R.Doc. 101, at 1.)** Collins did not oppose or otherwise respond to the Bill of Costs. Accordingly, on May 8, 2023, the clerk taxed costs in favor of KCPS as requested, awarding $9,701.29 in costs. **(App. 1390 R.Doc. 102, at 1.)** Collins does not appeal any aspect of that award.

# SUMMARY OF THE ARGUMENT

Collins claims KCPS discriminated against him based on race and retaliated against him for complaints of discrimination or whistleblowing. However, Collins failed to meet his burden of establishing those claims. Rather than address the basis of the court's determination or point to evidence supporting his claims, Collins unapologetically attempts to rewrite the record, as if rules of evidence or civil procedure are non-existent. In the rare instances in which Collins acknowledges these rules, he selectively applies them only when convenient, while ignoring them entirely if damaging to his position.

Notwithstanding his speculation and conjecture, Collins' claims are legally and factually unsupported. Collins failed to prove he was meeting the legitimate expectations of his employer or that similarly situated individuals were treated more favorably. He likewise failed to exhaust administrative remedies on his claims and, regardless, failed to establish prior complaints of race discrimination. Finally, Collins' whistleblower claim fails for multiple reasons, including his admitted participation in the very conduct he claims to have reported. Collins may not refuse to present evidence on his claims and then point to that refusal as a basis for claiming fact issues remain. He likewise may not simply ignore the evidence obliterating his claims which he himself inserted into the record.

KCPS respectfully requests this Court affirm the grant of summary judgment.

# LEGAL ARGUMENT AND AUTHORITIES

## I. The district court did not err in granting summary judgment in favor of KCPS on Collins' Race Discrimination Claims.

### A. Standard of Review

This Court reviews a grant of summary judgment *de novo*. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). Summary judgment is proper when, as here, the evidence demonstrates there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1130 (8th Cir. 2014). Once the movant meets this burden, the nonmovant must "substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Habib v. NationsBank*, 279 F.3d 563, 567 (8th Cir. 2001) (citation and quotations omitted). Merely offering a "scintilla of evidence" is insufficient. *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994). The facts are viewed in the light most favorable to the nonmovant only if there is a genuine dispute as to those facts. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). Moreover, this Court may affirm the district court's judgment on any basis supported by the record. *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 383 (8th Cir. 2016).

Despite this well-settled standard, Collins attempts to discard it entirely. Collins' "Statement of Facts" could just as well be denominated a "Statement of Unsupported Allegations"—since most of his citations point solely to his bare

allegations devoid of evidentiary support. However, this Court applies the same standard applied in the district court. *EEOC v. Kohler Co.*, 335 F.3d 776, 772 (8th Cir. 2003). Because Collins neither controverted, nor even attempted to ___**address**___, the substance of KCPS's statements of uncontroverted fact on summary judgment, they were (and still are) ___**deemed admitted**___ pursuant to FED. R. CIV. P. 56. Collins is not entitled to re-litigate his case from scratch under the guise of *de novo* review.

Not only does Collins attempt an improper "do over," but he doubles down on his discovery violations described in KCPS's Motion to Strike—requesting the Court to take "judicial notice" of other litigation as an attempt to transplant their records into this case as ___**new**___ substantive evidence. In other words, while he requested the district court to consider over 1,200 pages of improper evidence from other litigation, he now requests this Court to consider ___**every single pleading**___ from those lawsuits based on his cursory reference to "judicial notice." But judicial notice applies only to "facts" which are "not subject to reasonable dispute." FED. R. EVID. 201(b).

As even a cursory review of that other litigation reveals, not only do they ___**all**___ involve disputed allegations, but they do not even aid Collins' case. Consequently, to the extent the Court is inclined to entertain Collins' request, KCPS requests the Court to particularly take notice that: (a) *Waterman* resulted in the jury returning a

complete verdict in favor of KCPS, finding absolutely no discriminatory animus;[13] (b) *Collier* is an active case with only unproven allegations and no disposition; and (c) *Johnson* resulted in the claimant **dropping** his claims with prejudice in exchange for no compensation whatsoever).

Perhaps most egregious is Collins' attempt to introduce evidence from *Baldridge*, a case that he never even **_mentioned_** to the district court. This is the quintessential example of requesting this Court to convict the trial court of error that it did not make. Collins has made no effort to explain how the "interests of justice" should allow him to expand the record based upon a "rarely exercised" and "narrow exception." *Carpenters' Pension Fund of Illinois v Neidorff*, 30 F.4th 777, n.8 (8th Cir. 2022); *In re Broady*, 247 B.R. 470 (8th Cir. B.R. 2000). Applying the same standard as the district court is a far cry from allowing wholesale transfer of new evidence into the case to relitigate its merits.

### B. Collins failed to establish the prima facie elements of race discrimination.

Collins' race discrimination claim is governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[14] Under that framework, a claimant "must first

---

[13] **(App. 1105 R.Doc. 52, at 7; App. 1118-1132, R.Doc. 52-1, at 1-13, R.Doc. 52-2, at 1-2.)**

[14] Collins failed to plead a § 1981 claim. Similarly, Collins made no argument as to § 1983 and may not raise the issue now. *Boston v. TrialCard, Inc.*, 75 F.4th 861, 868 (8th Cir. 2023) ("we do not consider arguments raised for the first time on appeal."). Regardless, as the court noted, the same analysis applies for such claims. **(App. 1341 R.Doc. 99, at 15, n.5.)**

establish a prima facie case of discrimination." *Torgerson*, 643 F.3d at 1046. The burden thereafter shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision. *Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). Once the employer meets that burden, the claimant must establish that the proffered reason is a pretext for discrimination. *Id.* The burden of persuasion always rests with the claimant. *Carter v. Atrium Hospitality*, 997 F.3d 803, 808 (8th Cir. 2021).

The court did not err in determining Collins failed to present evidence establishing his prima facie claim. **(App. 1347 R.Doc. 99, at 21.)** Collins was required to demonstrate that he: (1) is in a protected class; (2) performed his job according to KCPS's legitimate expectations; (3) sustained an adverse employment action; and (4) was treated differently than similarly situated employees outside his protected class. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006). In other words, Collins had to present evidence allowing a reasonable factfinder to conclude his protected characteristic caused his termination. *Carter*, 997 F.3d at 808. His failure to establish any single element is fatal. *Land v. Washington Cnty., Minn.*, 243 F.3d 1093, 1095 (8th Cir. 2001).

### (1) KCPS's legitimate expectations.

Collins failed to establish the second element of his claim. Although the court found that Collins met this requirement, this Court can affirm the grant of summary

judgment on any basis supported by the record "even if rejected or ignored in the lower court." *Doe v. Univ. of St. Thomas*, 972 F.3d 1014, 1017 n.3 (8th Cir. 2020). To meet this element, Collins was required to show his performance was satisfactory as of the time of his termination. *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011). It is immaterial whether his performance was satisfactory at some point prior. *Miller v. Citizens Sec. Grp., Inc.*, 116 F.3d 343, 346 (8th Cir. 1997).

It is undisputed that KCPS terminated Collins for his willful participation in attendance fraud. **(App. 1347 R.Doc. 99, at 21.)** Collins points out no evidence to even intimate this behavior met KCPS legitimate expectations. The court concluded that this conduct was not dispositive, at this stage of the analysis however, because it might require Collins to "disprove his employer's reason for termination at the prima facie stage." (A**pp. 1342 R.Doc. 99, at 16.)** Although KCPS does not dispute the court's general statements of law, the court overlooked an important distinction.

As Collins concedes, he was fired for his attendance fraud conduct that "occurred in 2016." **(Aplt. Br. at 15, 33.)** However, Collins committed a distinctly separate violation of KCPS policy long after that conduct. **(App. 11, ¶ 45, R.Doc. 1-1, at 7.)** It was uncontroverted that Collins sent confidential student records to Johnson (a non-employee) years after their participation in attendance fraud. **(App 988-989 R.Doc. 47-7, at 2, ¶ 14-19.)** These records were not only KCPS property, but they also contained sensitive confidential student information, sent without

student or parent permission in violation of federal law.  **(App. 989, ¶ 17-19; App. 1330, 1333-1334 R.Doc. 99, at 4, 7-8.)**

One of Collins' essential job functions was to be familiar with and follow such law and applicable BOE policies.  **(App. 241 R.Doc. 40-10, at 1, ¶ 1; App. 242 R.Doc. 40-11, at 1, ¶ 1.)**  That policy explicitly required Collins to "[k]eep all student records . . . confidential[.]"  **(App. 242 R.Doc. 40-11, at 1, ¶ 8.)**  Thus, at the time of his termination, Collins was _**not**_ performing his job pursuant to legitimate expectations, separate and apart from his admitted fraudulent conduct in 2016. *Haigh*, 632 F.3d at 468; *see, e.g.*, *Phillips v. Wolfspeed, Inc.*, No. 1:22-CV-112, 2023 WL 3479630, at *3 (M.D.N.C. May 16, 2023) (legitimate expectations not met where employee engaged in timecard fraud).  The Court should affirm summary judgment on this basis alone.

**(2) Collins was not treated differently than similarly situated employees.**

Collins likewise failed to establish the fourth element—that he was treated differently than similarly situated employees outside of his protected class. *Twymon*, 462 F.3d at 934.  The section of Collins' pre-charge inquiry requiring him to identify those who were treated differently was left entirely blank.  **(App. 394 R.Doc. 47, at 20, ¶ 28.)**  He now focuses primarily on: (1) those individuals KCPS determined to be involved in attendance fraud; (2) Bishop; and (3) other KCPS personnel

performing authorized attendance reconciliation. Collins fails to meet his burden with respect to each of his supposed comparators.

### a. Employees who were determined to be involved.

Collins' claim is premised entirely upon the false notions that only he and L. Collier were interviewed or terminated for their participation in attendance fraud. First, Collins asserts there was no "direct" evidence that KCPS officials interviewed anyone other than Collins and L. Collier. **(Aplt. Br. at 19.)** Collins *ignores* the unfavorable portions of the uncontroverted record. For example, Collins admitted that KCPS met with every single individual determined to be involved. **(App. 404 R.Doc. 47, at 30, ¶ 137; App. 991 R.Doc. 47-7, at 5, ¶ 34.)** Moreover, in the deposition transcript Collins himself offered, Dr. Collier testified:

> Q. Anyone outside of LaQuyn Collier and Albert Collins that you can recall that were interviewed?
>
> A. I believe there may have been some other secretaries interviewed.

**(App. 853 R.Doc. 47-4, at 13, p. 45:11-18.)** Similarly, Collins' own brief quotes Overton's testimony that she also interviewed "a few staff members." **(Aplt. Br. at 23-24.)** Even further, Pam Kimble testified she *also* was interviewed. **(App. 737 R.Doc. 47-2, at 254, p. 1010:14-16.)** Collins cannot simply ignore these multiple instances of testimony contradicting his claims because they are inconvenient.

Next, relying solely on semantics, Collins alleges "KCPS identified white, managerial, decision-makers" who were involved but were not "fired." **(Aplt. Br.**

**at 30.)**  Collins' failure to cite any record support for that statement is not a coincidence, as it was uncontroverted that **_all_** individuals still employed and determined to be involved were terminated or left in lieu of termination—without exception.  **(App. 991 R.Doc. 47-7, at 5, ¶ 33-34.)**  This group was comprised of one White male, one Hispanic male, one Black male, and one Black female.  **(App. 403-404 R.Doc. 47, at 29-30, ¶ 136-138; App. 991 R.Doc. 47-7, at 5, ¶ 35.)**  In fact, the very testimony Collins inexplicably quotes in his brief obliterates his assertion.  After identifying such participants by name, Collins' brief quotes Dr. Collier's testimony:

> Q. Okay.  And then the individuals that you named earlier [. . .] are the individuals that you're aware of that were asking people to come and make those changes?
>
> A. I would just say all of them had knowledge, some knowledge, of what was going on . . .
>
> [. . .]
>
> Q. Okay.  ***Now do you know why these individuals <u>were terminated</u> if it was allegedly no longer going on***?
>
> A. Because, I mean, that's fraud.
>
> Q. Well, did the individuals know that it was fraud at the time?
>
> A. I don't know that it matters whether they knew.  Ignorance of the law doesn't free you from being responsible for your behavior.

**(Aplt. Br. at 18-19)** (emphasis added).  Thus, not only are Collins' assertions easily disproven by the record—he submitted—but they are contradicted by his own brief.

If anything, Collins' argument serves only to demonstrate that he was treated *more* favorably. Specifically, all individuals involved and still employed were given the opportunity to resign in lieu of termination. **(App. 403 R.Doc. 47, at 29, ¶ 135-136; App. 991 R.Doc. 47-7, at 5, ¶ 32-35.)** And notwithstanding his at-will employment status, Collins was nevertheless afforded the precise same opportunity to resign. (***Id.***) Collins declined that opportunity. He cannot now point to his own decision as a basis to manufacture a claim of "differential" treatment.

Likewise, Collins' argument that only he and L. Collier were interviewed serves only to describe a scenario in which he received *preferential* treatment. If true, they were the only employees who received an opportunity to explain their conduct—while all others were denied that same benefit and were terminated based solely upon Collins' and L. Collier's accounts. This is quite literally the ***antithesis*** of discrimination against Collins. The Court should therefore reject Collins' absurd suggestion that KCPS's thorough investigation is somehow indicative of racial animus. Moreover, Collins ignores that those who supposedly discriminated against him are also Black. **(App. 383-384 R.Doc. 47, at 9-10, ¶ 25-26.)**

**b. Bishop is not similarly situated.**

Collins next argues that he was similarly situated to Bishop, who he claims "oversaw the project which is known as 'attendance fraud.'" **(Aplt. Br. at 13.)** "The test to determine whether individuals are similarly situated is rigorous and requires

that the other employees be similarly situated in all relevant respects[.]" *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008). However, it was uncontroverted that Collins and Bishop did not: (1) have the same job or job duties; (2) work in the same department; (3) work under the same supervisors; or (4) have the same pay structure. **(App. 385-387 R.Doc. 47, at 11-13, ¶ 35-41, ¶ 48-50.)**

Regardless, Collins had the affirmative burden of proving his claim and was required to show that Bishop was accused of the same offense but was disciplined in a different way. *Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 560 (8th Cir. 1997). After its investigation, KCPS determined that Bishop did not engage in the same offense. **(App. 403 R.Doc. 47, at 29, ¶ 134.)** Yet, Collins was allegedly somehow able to make that very determination, citing only his unsupported allegations. **(Aplt. Br. at 13.)** Aside from the fact that KCPS directly controverted those allegations, they stated only that Bishop participated in reconciliation activities with other KCPS personnel. **(App. 407 R.Doc. 47, at 33, ¶ 155.)** But Collins did nothing to prove this was an "offense"—let alone the same offense.

In fact, Collins admitted he had no knowledge whether Bishop committed the same offense:

> Q. Do you have any evidence that Mr. Bishop was tasked with changing individual scores on various students and then putting that information in the way you did?
>
> A. Not to my knowledge.

**(App. 456 R.Doc. 47-1, at 29, p. 115:19-23.)**  Instead, Collins speculated that "as far as [he knew]," Bishop was the person from whom Collins alleged they "had to get [attendance] reports."  (***Id.*; App. 1346 R.Doc. 99, at 20.)**  Collins likewise admitted that he did not know the circumstances of Bishop's return to employment. **(App. 385 R.Doc. 47, at 11, ¶ 34; App. 1339 R.Doc. 99, at 13.)**  Collins' conjecture is insufficient to meet his burden.  *Habib*, 279 F.3d at 567; *see Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005) ("federal courts do not sit as a super personnel department that reexamines an entity's business decisions.").

### c.  Attendance reconciliation personnel.

Nothing more clearly demonstrates the absurdity in Collins' position than his assertion that he "should be treated the same way" as "countless other non-managerial KCPS employees" that were "not disciplined" for attendance reconciliation activities.  **(Aplt. Br. at 50.)**  First, Collins has it backwards in his assertion that "there is no evidence that Collins did anything different than those who were not fired."  (***Id.* at 54.)**  It was ***Collins'*** burden to prove that he was similarly situated to other employees—not the other way around.  *Twymon*, 462 F.3d at 934.  Not only did Collins fail to present evidence showing that other personnel ***were*** similarly situated, the evidence Collins ***did*** present overwhelming demonstrated the opposite.

Collins offered Dr. Collier's declaration marked as "Collins SJ Ex. 9" and directed the court's attention to Paragraphs 38 through 44 thereof. **(App. 408 R.Doc. 47, at 34, ¶ 159; App. 987-995, R.Doc. 47-7, at 1-9.)** Those paragraphs made clear that, unlike Collins, other KCPS personnel did not willfully and intentionally alter student attendance records in violation of KCPS policy. (**_Id._**) And based upon the undisputed evidence, the court agreed that Collins' conduct was "wildly different" than those authorized reconciliation activities—as Collins received attendance records on his personal computer and personal email account, using his sole discretion to alter student data at home. **(App. 1343-1344 R.Doc. 99, at 17-18.)** Consequently, Collins failed to prove he was similarly situated to these individuals.

Regardless, Collins did not even address whether these "countless other" employees were outside his protected class. _Twymon_, 462 F.3d at 934. Of course, Collins' failure to present evidence on the issue was for good reason. Had he done so, he would have been forced to confront the absurdity of his claims, since "a majority of the District personnel identified by [Collins] as participating in attendance alterations without termination **_are Black_** and over the age of 40." **(App. 1345 R.Doc. 99, at 19)** (emphasis added). This evidence that Collins conveniently overlooks is fatal to his position. _Gilmore v. AT&T_, 319 F.3d 1042, 1046 (8th Cir.

2003) (claim failed where three comparators were "members of the same protected group" as claimant).[15]

In summary, Collins' bare allegation that fraud "went far beyond the seven employees" identified is not self-proving, nor does it automatically amount to "an inference of discrimination" as Collins would hope. **(Aplt. Br. at 38.)** On the contrary, Collins was required to ***prove*** his claims. *Ward*, 111 F.3d at 561. He failed to do so.

### (3) Legitimate, Nondiscriminatory Reason and Pretext.

Because Collins failed to establish the elements of his claim, the Court need not consider whether KCPS proffered a nondiscriminatory reason for his termination. *Miller*, 116 F.3d at 347. But even if Collins had met his burden, KCPS clearly rebutted it. *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 638 (8th Cir. 2011). The burden therefore would have shifted back to Collins to prove that KCPS's reason was untrue. *Girten v. McRentals, Inc.*, 337 F.3d 979, 982 (8th Cir. 2003). It is insufficient for the employee to merely assert that the employer's proffered reason should be disbelieved. *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir. 1999).

---

[15] For the same reasons, L. Collier (who is also Black) is not a proper comparator for Collins' race discrimination claim. **(Aplt. Br. at 13.)** Additionally, not only was L. Collier a secretary (a position that Collins never held), but as with Bishop, Collins admitted that he "does not know" why L. Collier was terminated. **(App. 390 R.Doc. 47, at 16, ¶ 65; App. 1330 R.Doc. 99, at 4.)**

The court found KCPS met its burden to articulate a nondiscriminatory reason for Collins' termination, namely, his participation in fraudulently altering attendance records. **(App. 1347 R.Doc. 99, at 21;** *see* **App. 399-400 R.Doc. 47, at 25-26, ¶ 112-117)**; *Boston v. TrialCard, Inc.*, 75 F.4th 861, 867 (8th Cir. 2023 ("violations of company policy are legitimate, nondiscriminatory reasons for termination."). Collins makes no effort to challenge this determination. Nor could he, as he ***admits*** he received student attendance records on his personal computer and altered them from his home without any documentary support. **(App. 387 R.Doc. 47, at 13, ¶ 45-47.)** Although Collins claims that he "did not believe . . . that he had done anything wrong," Dr. Collier's testimony quoted in Collins' brief makes clear: "Ignorance of the law doesn't free you from being responsible for your behavior." **(Aplt. Br. at 19.)** Regardless, Collins admits he realized in 2018 that his actions were wrong and confessed to Dr. Collier that he "messed up." **(App. 208 R.Doc. 40-1, at 33, p. 177:12-19; App. 386 R.Doc. 47, at 12, ¶ 44; App. 1332 R.Doc. 99, at 6.)** Yet, Collins still failed to report his conduct, acknowledging that "KCPS did not have knowledge of the attendance allegations until January 2019 when DESE contacted KCPS." **(App. at 392 R.Doc. 47, at 18, ¶ 73.)**

Collins bewilderingly asserts that "no evidence suggests" he used discretion in deciding "which students' records were altered[.]" **(Aplt. Br. at 15.)** Yet Collins testified that he used his discretion in determining which records to alter, and by how

much: "It is myself discretion - - yes." **(App. 202 R.Doc. 40-1, at 27, p. 146:9-16; App. 389 R.Doc. 47, at 15, ¶ 61-62.)** He confirmed:

> Q. [. . .] you again used your discretion as to which individual students you - - the attendance were altered for, correct?
>
> A. Yes, sir.

**(App. 205 R.Doc. 40-1, at 30, p. 157:14-17.)** Collins also stated "UNDISPUTED" in response to KCPS's statement that Collins "admits again he used his discretion regarding which individual students he chose to alter their attendance." **(App. 390-391 R.Doc. 47, at 16-17, ¶ 66, ¶ 71-72.)** Consequently, the notion that "no evidence suggests" Collins used his discretion in deciding which records to alter is yet another instance of Collins picking and choosing when basic rules of evidence or civil procedure apply to him.

KCPS met its burden of showing that Collins' termination was not the result of discriminatory or retaliatory animus. It cannot possibly be said that KCPS's reason for terminating Collins has "no basis in fact." *Onyiah v. St. Cloud St. Univ.*, 684 F.3d 711, 716 (8th Cir. 2012).

## C. Collins' Hearsay Arguments Are Without Merit.

Directing the Court's attention away from his failure to adduce evidence, Collins now claims Dr. Collier's and Overton's declarations constitute inadmissible "hearsay." As a threshold matter, Collins' hearsay argument is a red herring warranting no consideration.

Because Collins failed to establish his prima facie claim, no evidentiary burden shifted to KCPS. *Hunt*, 282 F.3d at 1029. Consequently, whether KCPS's opposing evidence was probative of any issue is irrelevant. In other words, Collins' efforts to conjure up deficiencies in opposing evidence cannot somehow exempt Collins from the initial burden of proving his claims in the first place. Accordingly, Collins misses the point in his assertion that declarations somehow improperly established that other employees were not involved in fraud. As noted, it was Collins' burden to demonstrate that such employees *were* involved. *Ward*, 111 F.3d at 560. Collins has only himself to blame for his evidentiary shortcomings.

**(1) Collins failed to preserve the issue for review.**

In any event, Collins has waived the issue. The admission of evidence at the summary judgment stage is reviewed only for an abuse of discretion. *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 591 (8th Cir. 2011). Collins failed to make any objection pursuant to FED. R. CIV. P. 56(c)(2) that the declarations "cannot be presented in a form that would be admissible in evidence." Instead, he put forth only a generic objection that they were somehow "self-serving" and contained hearsay requiring them to be "stricken from the record." **(App. 386 R.Doc. 47, at 12, ¶ 38;** *id.*, **at 23, ¶ 104.)** This is fatal to his "hearsay" argument.

The district court noted the issue was not whether the declarations contained hearsay. **(App. 1338 R.Doc. 99, at 12, n.4.)** Instead, the real question was whether

the evidence "could be" presented at trial in an admissible form. (*Id.*); *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). Yet, like the nonmovant in *Gannon*, Collins "[did] not even attempt to argue that the information . . . could not have been presented in an admissible form at trial." 684 F.3d at 793. Even on appeal, Collins does not even mention—let alone address—the district court's basis for overruling his objections. He has therefore waived any challenge to that determination. *Stewart v. Norcold, Inc.*, 24 F.4th 1183, 1185 (8th Cir. 2022); *Montin v. Moore*, 846 F.3d 289, 295 (8th Cir. 2017). The Court should dispense with Collins' hearsay argument on this basis alone.[16]

### (2) The Declarations Are Not Hearsay.

Even if he had preserved the issue, Collins' hearsay argument has no merit. Aside from his failure to identify any specific language or paragraph within the declarations supposedly containing hearsay, Collins' assertions are contrary to law. Hearsay is "an out-of-court statement offered as evidence to prove the truth of the matter asserted." *U.S. v. Lamm*, 5 F.4th 942, 947 (8th Cir. 2021).

---

[16] If anything, Collins' hearsay argument serves only to prove why KCPS's Motion to Strike was proper. To wit, Collins argues the court was prohibited from considering statements not made "while testifying at the **current trial**." **(Aplt. Br. at 42)** (emphasis added). Yet, as KCPS pointed out, Collins' opposition relied almost ***exclusively*** upon testimony from other litigation. Thus, under Collins' own arguments, his summary judgment evidence was improper.

Dr. Collier's and Overton's declarations are simply not "hearsay." On the contrary, they are sworn statements setting forth testimony *in **this** case*. Those declarations are proper if they were "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). Both declarations illustrate that they were made upon the declarants' oath and personal knowledge. **(App. 227 R.Doc. 40-4, at 1; App. 987 R.Doc. 47-7, at 1.)**

Collins cannot possibly contend the declarants lack personal knowledge. Collins describes Overton as the Director of Employee Relations and Dr. Collier as the "highest-ranking official in KCPS's Human Resources Department." **(Aplt. Br. at 15.)** Consequently, the notion they cannot testify regarding duties, responsibilities, and classifications of employees they oversee is ludicrous. In a perfunctory attempt to avoid this conclusion, Collins claims Dr. Collier and Overton had no "immediate" involvement in the investigation. **(*Id.* at 43.)** Collins must again ignore an abundance of evidence to make this leap.

First, Collins ignores Dr. Collier's statement that she personally participated in meetings with Collins in connection with the investigation in her role as head of HR. **(App. 987 R.Doc. 47-7, at 1, ¶ 6-7.)** Not only does Collins not dispute this, but he expressly admitted it in response to material citing the precise same declarations. **(App. 397 R.Doc. 47, at 23, ¶ 102.)** Even more importantly, Collins

alleged in his _**own**_ statement of facts that "Collins met with Dr. Collier and other KCPS leadership regarding the attendance fraud approximately _**five or six times**_ prior to his termination." **(App. 409 R.Doc. 47, at 35, ¶ 171)** (emphasis added).

Collins' summary judgment evidence demonstrates that Overton was also directly involved in the investigation, as she testified as follows:

> Q. Okay. Now did you personally do any type of investigation into the attendance fraud?
>
> A. The original, when it was internal, I did.

**(App. 650 R.Doc. 47-2, at 167, p. 665:19-21.)** Overton's declaration relayed her first-hand experience of meeting with Collins on _**three**_ separate occasions regarding the investigation. **(App. 227-29 R.Doc. 40-4, at 1-3, ¶ 6-8, ¶ 14-16, ¶ 22.)** Collins' assertion that KCPS's highest ranking HR officials had no "involvement" in the investigation is, in a word, wrong.

More fundamentally, however, Collins' argument yet again reveals his improper attempts to pick and choose when basic rules of evidence apply. Collins claims the declarations are "hearsay" if used to establish the race of other KCPS employees, yet he conveniently lodges no such objection to the same declarations to establish L. Collier's race. **(App. 401 R.Doc. 47, at 27, ¶ 123.)** Indeed, Collins offered his _**own**_ declaration opining on the race of another employee. **(App. 996 R.Doc. 47-8, at 1, ¶ 5.)** Moreover, Collins' counsel asked Dr. Collier to opine as to the race of others no less than _**six separate times**_ in the very testimony he chose to

quote in his brief.  **(Aplt. Br. at 21)** ("Q. Now, you mentioned Albert Collins and LaQuyn Collier.  What are their - - do you know what their gender and race are?"); **(*id.*)** at 20–21 (Cordoba's, Murillo's, Reynolds', and Tunis' race).  Collins' brief does the same with respect to employment positions, citing Dr. Collier's testimony to support his description of Collins', L. Collier's, and Cordoba's job titles and duties.  **(*Id.* at 17-18, 22-23.)**  Again, Collins cannot have it both ways, claiming that Dr. Collier and Overton are somehow incompetent to personally testify as to employee's race or job duties, while simultaneously citing their testimony to establish the precise same thing when it is convenient.

### (3) KCPS's Knowledge and Intent are not Hearsay.

In any event, Collins also overlooks the purpose for which the evidence was offered.  Collins emphasizes that Dr. Collier and Overton "were the decisionmakers regarding the attendance fraud employees."  **(Aplt. Br. at 37.)**  It should go without saying that whether decisionmakers "intentionally" discriminated against Collins necessarily requires a finding as to their "intent."  Yet, Collins suggests the court was prohibited from considering evidence bearing on that intent, and which came straight from the ***only*** individuals who could have personal knowledge of that intent.

But as Collins' authority acknowledges, evidence is admissible if offered to demonstrate the declarant's intent or state of mind.  *Johnson v. Herman*, 132 F.Supp.2d 1130, 1133 (N.D. Ind. 2001) (evidence admissible to "demonstrate a lack

of deliberate indifference"); *see White Communications, LLC v. Synergies3 Tec Servs., LLC*, 4 F.4th 606, 613 (8th Cir. 2021) ("a statement offered to show its impact on the listener is not hearsay."). Collins had the ultimate burden of establishing that KCPS's actions "were based on an intent to discriminate rather than on a ***good-faith belief*** that [Collins] committed misconduct justifying termination." *Boston*, 75 F.4th at 868 (emphasis added).

Collins therefore misses the point in his assertion that such declarations were purportedly used to establish Bishop's non-involvement or to establish the "reasoning for the actions of the KCPS employees who engaged in attendance fraud." **(Aplt. Br. at 41.)** But the veracity of Collins' characterizations have no impact on the probative value of the declarations. Even ***assuming*** the third-party investigation was incorrect in its findings, "it is not unlawful for a company to make employment decisions based upon erroneous information and evaluations." *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir. 2013). In other words, "employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully." *Tuttle v. Mo. Dept. of Agriculture*, 172 F.3d 1025, 1033 (8th Cir. 1999).

Because facts contained within the declarations merely set forth the basis of KCPS's decisions, they are not hearsay. **(App. 990 R.Doc. 47-7, at 4, ¶ 26)** ("Based on these findings, [KCPS] determined [Collins] violated its policies"). Collins has

presented no evidence that KCPS had anything other than a good-faith belief as to the basis for its decisions. Collins may not simply speculate without submissible evidence as to KCPS's thought process, asking the Court to substitute its judgment in place of KCPS's real time decisions. *Torlowei*, 401 F.3d at 935.

Regardless, Dr. Collier's and Overton's declarations are expressly based upon those individuals' review of business records kept in the ordinary course of business. *See* FED. R. EVID. 803(6); **(App. 1338 R.Doc. 99, at 12, n.4.)** "A statement based on the personal knowledge of the declarant of facts underlying his statement is not the repetition of the statement of another, thus not hearsay." *Mahlandt*, 588 F.2d at 630. In fact, as Collins' attorney argued in *Boston*, "[i]f both the source and recorder of the information were acting in the regular course of the organization's business . . . the hearsay upon hearsay problem may be excused by the business records exception." *See* 2023 WL 143994, at *12; *Grogg v. Mo. Pac. R.R. Co.*, 841 F.2d 210, 213–14 (8th Cir. 1988). Not only do Dr. Collier's and Overton's declarations expressly state that they are based upon personal knowledge and participation in KCPS's investigation, but they also detail their review of pertinent KCPS records and personnel files and describe the regular business activities of personnel acting under their watch and pursuant to their directives. **(App. 987-990 R.Doc. 47-7, at 1-4; App. 229-230 R.Doc. 40-4, at 3-4, ¶ 29.)** Accordingly, the evidence is also excepted from hearsay pursuant to FED. R. EVID. 803(6).

**(4) Invited Error.**

Even if the court improperly considered the evidence (it did not), Collins invited the error by offering the precise same material as evidence to support his claims. "[A]n erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned." *Smith v. Toyota Motor Corp.*, 964 F.3d 725, 730 (8th Cir. 2020). Although Collins asserts the court should not have considered the declarations, he simultaneously ignores that he offers the same declarations to be considered.

Collins attached the entirety of Dr. Collier's declaration as a supporting exhibit to his opposition—labeling it as "Collins SJ Ex. 9." **(App. 987-995 R.Doc. 47-7, at 1-9.)** Collins directed the district court's attention to Paragraphs 38 through 44 of that declaration as substantive evidence. **(App. 408 R.Doc. 47, at 34, ¶ 159.)** Similarly, on appeal, Collins cites both Dr. Collier's and Overton's declarations to support his assertion that KCPS "confirmed" Collins' allegation that attendance fraud "was a districtwide occurrence." **(Aplt. Br. at 32.)** These materials that Collins directed the court to consider provided context regarding the authorized attendance reconciliation activities of other KCPS personnel. **(App. 992 R.Doc. 47-7, at 6, ¶ 38-44.)** Consequently, Collins cannot possibly argue the court erred in considering such evidence to find that other personnel's conduct wildly differed from Collins' admitted violations of KCPS policy.

Yet again, Collins improperly seeks to have it both ways—claiming that evidence is "inadmissible" and should be "stricken from the record," only to immediately offer that same evidence as substantive proof. Because Collins invited consideration of the evidence, he cannot now complain that he got exactly what he wanted. *See, e.g.*, *U.S. v. Spotted Bear*, 920 F.3d 1199, 1201 n.2 (8th Cir. 2019).

### D. Collins' "Sham Declaration" Argument Fails.

Collins argues Dr. Collier's and Overton's declarations are "sham declarations." **(Aplt. Br. at 41.)** Collins presented no such argument below, objecting only that the declarations were "hearsay." **(App. 385 R.Doc. 47, at 11, ¶ 37.)** But whether declarations contain hearsay is an entirely separate question. *Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 831 (8th Cir. 2020). Because Collins failed to present the issue below, he has waived it on appeal. *Boston*, 75 F.4th at 868; *Intl Broth. Of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d at 1084, 1096 (8th Cir. 2004). Regardless, the "sham affidavit" rule is inapplicable. That doctrine narrowly applies to prevent introduction of sham issues to ***avoid*** summary judgment. *Button*, 963 F.3d at 830; *Baker v. Silver Oak Senior Living Mgmt. Co., LC*, 581 F.3d 684 (8th Cir. 2009).

Even if it applied, it would not aid Collins. Collins claims that the declarations are somehow "materially different" than prior testimony. **(Aplt. Br. at 41.)** However, alleging that testimony is "materially different" is insufficient, as Collins'

own authority requires the material to be ***directly contradictory***. *Baker*, 581 F.3d at 690. Collins makes no effort to meet this standard. Indeed, he does not even identify the testimony he claims to be "different." Nor does he cite any specific portion of the record demonstrating that difference. Instead, Collins directs the Court to "App. 375–427"—which is the ***entirety*** of his 53-page summary judgment opposition (including his indiscriminate citation to over 50 separate fact statements). **(Aplt. Br. at 41.)** It is not the Court's responsibility to "mine [the] summary judgment record searching for nuggets of factual disputes to gild [Collins'] argument." *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). Accordingly, Collins' directive that the Court simply "go find it" is clearly insufficient to carry his burden.

In any event, there is nothing contradictory about Dr. Collier's and Overton's declarations in relation to prior testimony and nothing therein could possibly be construed as an admission that "attendance fraud was widespread throughout KCPS." **(Aplt. Br. at 50.)** Dr. Collier's declaration unequivocally states that "[w]ithout exception," every individual determined to have committed fraud "was either terminated or resigned in lieu of termination." **(App. 991 R.Doc. 47-7, at 5, ¶ 33.)** Because Collins makes no effort to identify any "sudden and unexplained revision" of prior testimony, his belated "sham declaration" argument fails. *Garang v. City of Ames*, 2 F.4th 1115 (8th Cir. 2021).

Based on the foregoing, the district court did not err in granting summary judgment to KCPS on Count I of Collins' petition.

## II. The district court did not err in granting summary judgment in favor of KCPS on Collins' Retaliation Claim.

### A. Standard of Review

KCPS refers to Section I.A, *supra*, for a statement of the applicable standard of review.

### B. Failure to Exhaust Administrative Remedies

The Court need not even consider the merits of Collins' retaliation claim, as he indisputably failed to exhaust his administrative remedies. It is axiomatic that an employee may not initiate a civil action without first exhausting administrative remedies. *Briley v. Carlin*, 172 F.3d 567, 571 (8th Cir. 1999). A charge "limits the scope of the subsequent civil action because the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006); *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002).

Neither Collins pre-charge inquiry nor the charge itself connects his termination to any statutorily protected status. For example, Collins submitted his pre-charge inquiry on the ***same day*** of his termination, when the allegations were fresh in his mind. **(App. 235 R.Doc. 40-7, at 2.)** However, although he was required

to "[c]heck all that apply," he did not check *any* boxes alleging he: (a) was retaliated against for filing a charge, (b) complained about discrimination, or (c) was a witness in someone else's complaint. (***Id.***) Instead, Collins' own handwriting stated: "FORMER EMPLOYEE SUED THE DISTRICT & BECAUSE OF THE INFORMATION I POSSESS WAS TERMINATED." (***Id.***) Thus, Collins alleged only that he was terminated because of his "knowledge" and the information he possessed, about the attendance fraud he participated in. (***Id.***)

Collins' charge alleged that a past supervisor "named [him] as a witness" in claims against KCPS. (**App. 216 R.Doc. 40-2, at 1.**) However, the charge contained no indication or allegation that the supervisor's claims had anything to do with race or age discrimination. Nor did it include any allegation that he complained about "no longer being considered for jobs and other promotional opportunities" as he now claims. (**Aplt. Br. at 47.**)[17] Instead, Collins indicated that he was placed on leave due to an investigation "regarding my participation in unethical attendance record changes[.]" (**App. 216 R.Doc. 40-2, at 1.**) Moreover, he reiterated in his testimony that he was terminated solely because of the information he possessed and "for having the - - the attendance names." (**App. 383 R.Doc. 47, at 9, ¶ 24; App. 188 R.Doc. 40-1, at 13, p. 50:23-24.**)

---

[17] Collins explicitly admitted that his charge failed to include any allegation, intimation, or even suggestion that KCPS failed to promote him at any time. (**App. 382-384, R.Doc. 47, 8-10, ¶ 18, ¶ 30-31.**)

Because Collins' administrative filings failed to contain any allegation that KCPS retaliated again him for participating in protected activity, he cannot pursue his claims in this action. "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994); *see Parisi v. Boeing Co.*, 400 F.3d 583, 586 (8th Cir. 2005) ("it is not reasonable to expect the EEOC to look for and investigate such adverse employment actions if they are nowhere mentioned in the administrative charge."). Simply put, "there is a difference between liberally reading a claim which lacks specificity, and inventing *ex nihilo*, a claim which simply was not made." *Cottrill*, 443 F.3d at 635. Consequently, the Court should reject Collins' retaliation claim for this reason alone.

### C. Collins failed to establish the prima facie elements of his claim.

As Collins acknowledges, he had "the initial burden to establish a prima facie case for each claim." **(Aplt. Br. at 28.)** To prove his claim, Collins was required to show that: "(1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity." *Kohler*, 335 F.3d at 772. Collins had to establish that his opposition to unlawful discrimination was the "but-for"

cause of his termination.  *Porter v. City of Lake Lotawana*, 651 F.3d 894, 898 (8th Cir. 2011).

Collins failed to establish protected activity.  As the court found, Collins presented no evidence that he "complained to his manager, HR, or anyone else that he was being discriminated against due to his race[.]"  **(App. 1353 R.Doc. 99, at 27.)**  On appeal, Collins does nothing to demonstrate error in that determination. Although he describes his burden as "minimal," that burden is not non-existent. Collins must point to ***something***.

Collins directs the Court's attention only to Paragraphs 168-169 of his summary judgment opposition.  **(Aplt. Br. at 47; App. 409 R.Doc. 47, at 35.)** However, the only material cited therein even remotely touching on the subject is Collins' deposition testimony, which itself demonstrates that he did ***not*** engage in protected activity.  Collins testified he complained about Major Brooks receiving a promotion over him.  **(App. 210-211 R.Doc. 40-1, at 35, p. 188:4-189:3.)**  But Collins ignores that Brooks is also Black.  **(App. 393 R.Doc. 47, at 19, ¶ 80; App. 401 R.Doc. 47, at 27, ¶ 122.)**  Consequently, Collins' subjective resentment with respect to this promotion is a far cry from statutorily protected activity.

Similarly, Collins' "participation" in KCPS's investigation is not protected activity, as his own admissions make clear that such investigation had nothing to do

with race, age, or any other protected status. **(App. 1354 R.Doc. 99, at 28.)** As Collins testified:

Q. That was not an investigation for race discrimination, was it, sir?

A. No, sir.

Q. It wasn't an investigation for age discrimination, was it, sir?

A. Not that I know of.

Q. It wasn't an investigation on retaliation, was it, sir?

A. Not that I know of.

**(App. 381 R.Doc. 47, at 7, ¶ 13)**; *see, e.g.*, *Parker v. City of St. Joseph, Mo.*, No. 04-6054-CV-SJ-GAF, 2008 WL 11337946, at *7 (W.D. Mo. June 6, 2008) (investigation must related to conduct prohibited under Title VII).

Neither Johnson's lawsuit nor his alleged "motives for taking action against KCPS" had anything to do with race. *See* **(Aplt. Br. at 48.)** Although Collins repeatedly refers to Johnson's claims as alleging "discrimination," he fails to cite the Court to any specific portion of that lawsuit supposedly containing such allegation. That failure is unsurprising, as Johnson's lawsuit does not even mention the ***word*** "discrimination." **(App. 1444-1465 R.Doc. 1-1, at 1-22.)** Moreover, Collins testified that the "motive" for that lawsuit was solely Johnson's desire for "retribution" against KCPS because he "felt some kind of way against the district[.]" **(App. 392 R.Doc. 47, at 18, ¶ 74; App. 208 R.Doc. 40-1, at 33, p. 180:14-17.)**

Thus, Johnson's alleged motives for his claims likewise had nothing to do with discrimination.

Finally, Collins failed to establish the causation element of his claim. *Kohler*, 335 F.3d at 772. As explained above, the uncontroverted facts established Collins was terminated for fraudulently altering attendance records without justification. Collins admits he immediately left "from being fired" on December 9, 2019, and "went to the EEOC office to file a charge." **(Aplt. Br. at 15.)** And Collins' charge was not filed until a month later. **(App. 216 R.Doc. 40-2, at 1.)** Consequently, Collins' termination could not have possibly been caused by his complaints to the EEOC.

Title VII prohibits employers from retaliating against employees for engaging in "statutorily protected activity." *Kohler*, 335 F.3d at 772. Because Collins failed to present any evidence he engaged in protected activity, his retaliation claim fails as a matter of law. *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047 (8th Cir. 2005).[18] Accordingly, the district court did not err in granting summary judgment to KCPS on Count III of Collins' petition.

### III. The district court did not err in granting summary judgment in favor of KCPS on Collins' Whistleblower Claim.

---

[18] For the same reasons set forth *supra*, KCPS's legitimate, nondiscriminatory reason for terminating Collins was not pretext for any discriminatory or retaliatory animus.

## A. Standard of Review

KCPS refers to Section I.A, *supra*, for a statement of the applicable standard of review.

## B. Collins' Whistleblower Claim Fails.

Collins asserts the court erred in rejecting his whistleblower claim under MO. REV. STAT. § 105.055 (Count V). However, Collins' claim fails for at least three independently dispositive reasons.

### (1) MO. REV. STAT. § 105.055 is inapplicable.

Collins failed to demonstrate that MO. REV. STAT. § 105.055 was triggered in the first place. Under Section 105.055, a public employee may not be disciplined for "disclosure" of information "the employee reasonably believes" is evidence of certain types of wrongdoing—such as a violation of law or abuse of authority. *Spurlock v. City of Columbia*, 670 S.W.3d 151, 156 (Mo. App. W.D. 2023); *Richest v. City of Kan. City*, 643 S.W.3d 610, 613 (Mo. App. W.D. 2022). However, a plaintiff must establish their claim under this statute by "clear and convincing" evidence. MO. REV. STAT. § 105.055.7(3); *Hudson v. O'Brien*, 449 S.W.3d 87, 93 (Mo. App. W.D. 2014).

At the outset, Collins presented no evidence that he made a "disclosure" triggering Section 105.055. Indeed, Collins admitted that his pre-charge inquiry

stated only that he was fired for "possessing" knowledge of the fraud. **(App. 235 R.Doc. 40-7, at 1-4.)** Moreover, Collins testified that he believed he was retaliated against because of "information that I had" and not because of any information he told or disclosed to someone else. **(App. 482 R.Doc. 47-1, at 55.)** These admissions are fatal to Collins' claim.

Regardless, even if a disclosure was made, Collins repeatedly reveals that ***he*** did not make any such disclosure. Instead, Collins hinges the success of his claim on the assumption that ***Johnson's*** report to DESE qualifies as a report by Collins, pointing out that "Johnson . . . used evidence he received from Collins to report attendance fraud." **(Aplt. Br. at 2.)** Of course, Collins fails to cite any legal authority supporting the notion that he automatically receives protection so long as ***someone*** makes a report.

On the contrary, the statute's plain language required Collins to show "by clear and convincing evidence" that he or someone acting on his behalf reported "suspected prohibited activity." MO. REV. STAT. § 105.055.6(3). Not only did Collins fail to present such evidence, but he also conveniently ignores the evidence he ***did*** present. Specifically, Collins offered Johnson's deposition from another matter, which illustrated that Collins was totally ***unaware*** that a report was being made. As Johnson testified:

> A. [. . .] I didn't even go into detail what I needed them for, so [Collins] didn't see no reason what he was getting himself into. It was just

me requesting documents that me and him had already worked together as far as having these things because we seen the reports every day.

**(App. 817 R.Doc. 47-3, at 28, p. 107:7-12.)**  If Collins did not even know that a report was made in the first place, he could not have possibly "reasonably believed" he was disclosing "evidence" of misconduct to trigger the statute's protection.  MO. REV. STAT. § 105.055.3(1).

Even if Collins had known a report was being made, he failed to adduce any evidence that he reasonably believed it demonstrated "suspected prohibited activity."  MO. REV. STAT. § 105.055.6(3).  Critically, Collins *__still__* maintains that he "did not do anything wrong" while employed with KCPS.  **(App. 406 R.Doc. 47, at 32, ¶ 149; Aplt. Br. at 15)** ("Johnson also testified Collins did nothing wrong[.]").  He also claims that "all the other KCPS employees" engaged in the exact same conduct.  **(Aplt. Br. at 48.)**  But if Collins does not even "believe" that the conduct he supposedly reported was "wrong," then he could not *__possibly__* demonstrate that he "reasonably believed" he was reporting prohibited conduct.  MO. REV. STAT. § 105.055.3(1); *Hudson*, 449 S.W.3d at 92–94.  Accordingly, Collins' whistleblower claim fails, and the Court should affirm on this basis alone.

**(2) KCPS was already aware of the attendance fraud.**

Collins' claim independently fails because KCPS was already indisputably aware of the information supposedly disclosed by Collins.  It was uncontroverted

that because Johnson lodged a complaint with DESE, KCPS not only had knowledge of the scheme, but also had knowledge of Collins' specific involvement therein. **(App. 392 R.Doc. 47, at 18, ¶ 74; App. 396-397 R.Doc. 47, at 22-23, ¶ 99-102.)** Accordingly, the court properly found "that KCPS knew about the attendance scheme prior to interviewing [Collins.]" **(App. 1356 R.Doc. 99, at 30.)**

A "disclosure" requires the "revelation of something previously unknown." *Spurlock*, 670 S.W.3d at 157; *Hudson*, 449 S.W.3d at 92. By contrast, "[s]tatements made to someone who was already aware of the information do not qualify as 'disclosure' under § 105.055." *Johnson v. City of Leadington*, No. 4:19-cv-02282-SEP, 2022 WL 179218, at *9 (E.D. Mo. Jan. 20, 2022). Collins summarily claims that he provided "new" information to KCPS, and that KCPS made its decision to outsource the investigation "because of information Collins provided them[.]" **(Aplt. Br. at 33.)** Aside from that assertion being demonstrably false, Collins fails to identify for the Court precisely ***what*** "information" he supposedly disclosed (or was supposedly unknown) to KCPS at that time.

Instead, Collins speculates that he ***must have*** disclosed something new based solely upon the timing of KCPS's decision to outsource its investigation. But Collins may not simply speculate as to KCPS's knowledge. On the contrary, Collins had the affirmative burden of proving that KCPS was unaware of the information he disclosed—not the other way around. MO. REV. STAT. § 105.055.6(3); *Hudson*, 449

S.W.3d at 93. Yet, Collins admitted that KCPS's decision to outsource its investigation had nothing to do with any purportedly "new" information received from him. Specifically, Collins responded "UNDISPUTED" in response to KCPS's statement that, after it met with Collins, it "hired independent, third-party firms to investigate ***Mr. Johnson's allegation*** that [KCPS] employees submitted falsified attendance records[.]"  **(App. 398 R.Doc. 47, at 24, ¶ 110)** (emphasis added). Collins may not ignore his own admissions. FED. R. CIV. P. 56(e).

Because Collins has failed to establish that he made any "disclosure" under the statute, his whistleblower claim fails.

### (3) Collins' own violations.

Finally, even if Section 105.055 was triggered, an explicit statutory exception bars his claim. Under Section 105.055.4(4), an employee is not protected where "the disclosure relates to the employee's own violations." In other words, the statute does not protect Collins if he participated in the same activity he allegedly reported. Collins has repeatedly admitted this to be the case. **(App. 1347 R.Doc. 99, at 21.)** Collins testified as follows:

> Q. So is it fair to say that the - - the information - - the subject of your whistle blowing is the exact same thing that you were involved in, correct?
>
> A. Yes, sir.
>
> . . .

Q. [. . .] [You're] whistle blowing about the same activity that you're involved in, correct?

A. Yes, sir.

**(App. 473 R.Doc. 47-1, at 46, p. 182:25-183:12.)** Collins also admitted it was "UNDISPUTED" that he was "a participant in the activities that are the subject of his whistleblowing claim" and that documents KCPS received from DESE revealed that participation. **(App. 393 R.Doc. 47, at 19, ¶ 77; App. 396 R.Doc. 47, at 22, ¶ 100.)** Not only does Collins continue to admit his participation, but he attempts to *justify* it based upon his assumption that "countless other" employees engaged in the same conduct.

Collins did not voluntarily "come forward" with information as he suggests. **(Aplt. Br. at 34.)** Collins concedes his conduct "occurred in 2016." **(*Id.* at 15.)** He failed to report his conduct at that time. Collins came to the realization in 2018 that his conduct was wrong. **(App. 208 R.Doc. 40-1, at 33, p. 177:12-19; App. 386 R.Doc. 47, at 12, ¶ 44.)** He still failed to report it. And according to Collins, KCPS was unaware of the scheme "until January 2019 when DESE contacted KCPS" regarding Johnson's complaint. **(App. 392 R.Doc. 47, at 18, ¶ 73.)** Collins *still* failed to come forward. Instead, Collins only "voluntarily" provided information when he was supposedly "interrogated by KCPS leadership regarding Johnson's complaint" on February 28, 2019. **(Aplt. Br. at 47.)** Consequently, Collins'

suggestion that he somehow demonstrated a "willingness to come forward" is a colossal mischaracterization.  In fact, as Collins himself put it:

> A. [. . .] *The **only** reason* why all this got reported was because Sam Johnson felt some type of way against the district and he decided he wanted retribution, and so here we are.

**(App. 208 R.Doc. 40-1, at 33, p. 180:14-17)** (emphasis added).

Collins is not a whistleblower.  He was a voluntary participant in the very fraud he allegedly reported and only came clean when he was caught red-handed.  Consequently, the court did not err in granting summary judgment in favor of KCPS on Count V of Collins' petition.[19]

---

[19] The Court should likewise reject Collins' nonsensical argument that Section 105.055 "does not exclude reports of wrongdoing to the wrongdoers." **(Aplt. Br. at 51.)**  The statute's exception bars protection for disclosures relating to the employee's "own violations"—regardless of to whom the disclosure is made.  In other words, an employee engaged in the precise same misconduct they are reporting cannot somehow circumvent that exception barring their claim by simply reporting their misconduct to a fellow wrongdoer.

## **CONCLUSION**

Collins may not resort to rampant speculation and conjecture to support his assertions, which are themselves internally contradictory and nonsensical. KCPS respectfully requests this Court reject Collins' efforts to deflect and misdirect attention from his failure to present probative evidence establishing the essential elements of his claims. Based on the foregoing, the district court's grant of summary judgment in favor of KCPS on Counts I, II, III, and V of Collins' petition should be affirmed.

Respectfully submitted,

*/s/ Charlie J. Harris, Jr.*
Charlie J. Harris, Jr., MO #44115
Nicholas Rex Daugherty, MO #66942
Kelly M. Sabatés, MO #72995
SEYFERTH BLUMENTHAL & HARRIS LLC
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Telephone:  816-756-0700
Facsimile:  816-756-3700
Email:      charlie@sbhlaw.com
            nickd@sbhlaw.com
            kokis@sbhlaw.com

**Attorneys for Defendant-Appellee Kansas City Missouri Public School District**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(G)

As required by Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(7)(B), I certify that this brief is proportionally spaced, has typeface of 14-point in Times New Roman, contains 12,943 words (excluding parts of this brief exempted by FED. R. APP. P. 32(f)), and was prepared using Microsoft Word 2013.

Pursuant to Eighth Circuit Rule 28A(h), I certify that the brief is in Portable Document Format and has been scanned for viruses and is virus-free.

*/s/ Charlie J. Harris, Jr.*
Charlie J. Harris, Jr., MO #44115
Nicholas Rex Daugherty, MO #66942
Kelly M. Sabatés, MO #72995
SEYFERTH BLUMENTHAL & HARRIS LLC
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Telephone:  816-756-0700
Facsimile:  816-756-3700
Email:        charlie@sbhlaw.com
                  nickd@sbhlaw.com
                  kokis@sbhlaw.com

**Attorneys for Defendant-Appellee Kansas City Missouri Public School District**

## CERTIFICATE OF SERVICE

I certify that, on September 6, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Charlie J. Harris, Jr.*
Charlie J. Harris, Jr., MO #44115
Nicholas Rex Daugherty, MO #66942
Kelly M. Sabatés, MO #72995
SEYFERTH BLUMENTHAL & HARRIS LLC
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Telephone:  816-756-0700
Facsimile:  816-756-3700
Email:      charlie@sbhlaw.com
            nickd@sbhlaw.com
            kokis@sbhlaw.com

**Attorneys for Defendant-Appellee Kansas City Missouri School District**